IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02389-WYD

MICHAEL DAVID STEIN,

      Applicant,

v.

ARISTEDES W. ZAVARAS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER OF DISMISSAL

---

Applicant Michael D. Stein is a prisoner in the custody of the Colorado Department of Corrections at the Arkansas Valley Correctional Facility in Crowley, Colorado.  On October 7, 2009, he filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") challenging his Colorado state conviction in Adams County District Court, Case No. 04CR701.  The Application has been fully briefed by the parties.

I must construe the Application and other papers filed by Mr. Stein liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  After reviewing the entire file

and the state court record, I find that an evidentiary hearing is not necessary.  For the reasons stated below, the Application will be denied, and the action will be dismissed.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Stein was charged on March 12, 2004, in Adams County District Court in 04CR701 with possession with intent to deal in, sell and distribute sexually exploitative material involving children, in violation of Colo. Rev. Stat. §18-6-403, a class 3 felony. (State Court Record ("R.") Vol. 1 at 1-3).  The evidence against Mr. Stein was primarily gained from the exercise of a search warrant at his apartment on December 2, 2003.  (R. Vol. 1 at 5-8).

On June 8, 2004, a charge of Criminal Attempt to Commit Sexual Exploitation of Children, in violation of Colo. Rev. Stat. §§ 18-2-101 and 18-6-403, a class 4 felony, was added to the information filed against Applicant.  (R. Vol. 1 at 15-16).  Also on June 8, 2004, Mr. Stein pleaded guilty to the 'attempt' charge. (R. Vol. 1 at 17). His sentencing was set for August 17, 2004, but was continued when it was determined that Applicant had received an incorrect advisement of the possible penalties that could be imposed based on his guilty plea.  (R. Vol. 4 at 3-4.)

When the August 17, 2004 hearing began, the Court was alerted to that fact that it had been determined that Mr. Stein was subject to a possible sentencing enhancement set forth in Colo. Rev. Stat. § 18-1.3-1004(4)(a). Because this possible penalty was significantly higher than the 2-12 years that he had been led to expect, his counsel asked that Mr. Stein be allowed to withdraw his guilty plea so he could have more time to consider his options.

On August 31, 2004, Applicant's counsel argued that the Prosecutor had entered into a contract with his client and should be compelled to perform the government's side of the contract.  The Court noted that he had not been part of the agreement to sentence within that range and could not be forced to comply with an agreement to which the Court was not a party.  The argument was therefore rejected.   Instead the Court indicated that the options were that Mr. Stein could either withdraw his plea and have the case set for trial, or receive a proper advisement and again opt to plead guilty.  Counsel then attempted to convince the Court to give Mr. Stein an indication of whether it was inclined to sentence him to an indeterminate term before Mr. Stein made a decision about which option he would choose.  The Court noted that it would be highly unusual to give an opinion about the likely sentence, even if the Court made such a decision, and declined to give such an indication.  He gave the parties a brief recess so Mr. Stein could further consult with his counsel.

After the recess and a new, very thorough advisement from the Court, Mr. Stein again pleaded guilty to attempted sexual exploitation of children, Colo. Rev. Stat. §§ 18-2-101 and 18-6-403, a class 4 felony (R. Vol. 5 at 31). His counsel stated that Mr. Stein's decision was against the advice of counsel but Mr. Stein said that he understood that whether he pleaded guilty or not, he would still be subject to an indeterminate life sentence so he chose not to go to trial.  (R. Vol. 5 at 20 and 35). Although the parties agreed to proceed to sentencing immediately, the Court stated that it wanted additional time to consider the adjusted sentencing range and the factors that should be considered with regard to that range.  (R. Vol. 5 at 40). Consequently, the sentencing was set over to

the next day.  On September 1, 2004, the Adams County District Court sentenced Mr. Stein to the Colorado Department of Corrections for an indeterminate term of 10 years to life (R. Vol. 1 at 20).

Stein directly appealed his sentence, but the Colorado Court of Appeals affirmed. (R. Vol. 1 at 22). The Colorado Supreme Court denied certiorari review on August 6, 2007. (R. Vol. 1 at 21). There is no record that Stein petitioned the United States Supreme Court for certiorari review.

On November 20, 2007, Stein moved for reconsideration of his sentence pursuant to Colo. R. Crim. P. 35(b). (R. Vol. 1 at 31). The district court denied this motion on the following day.  (R. Vol. 1 at 53).  On March 14, 2008, Stein collaterally attacked his conviction under Colo. R. Crim. P. 35(c).  (R. Vol. 1 at 55).  Again, the district court denied relief, and Stein sought appellate review. (R. Vol. 1 at 67).  The Colorado Court of Appeals affirmed, and the Colorado Supreme Court denied certiorari review on September 21, 2009. (R. Vol. 1 at 73 and 70 respectively).

Mr. Stein filed his Application in this Court on October 7, 2009, asserting the following ten claims:

(1)     Applicant's guilty plea was obtained as a result of ineffective assistance of counsel.

(2)     Applicant's guilty plea was obtained as a result of promises that were not fulfilled by the Prosecutor.

4

(3)     Applicant's guilty plea was obtained without Applicant's having a full understanding of the plea.

(4)     Applicant was convicted of conduct which constituted protected speech as guaranteed by the First Amendment.

(5)     Applicant's conviction and sentence were obtained as a result of the Prosecutor's misstatement of facts denying Applicant a fair trial.

(6)     Evidence, conviction and sentence were a result of Police and Custodial interrogation conducted without advisement of the Right to Counsel being present.

(7)     Applicant's sentence was imposed without due process because of insufficient screening and assessment.

(8)     Applicant was denied the right to present a defense to sentencing enhancement factors.

9)     Applicant was denied the opportunity to confront and cross examine witnesses against him regarding  sentencing enhancement factors.

10)     Applicant was illegally sentenced beyond the presumptive range on the basis of facts not determined by a jury beyond a reasonable doubt.

On October 14, 2009, Magistrate Judge Boyd N. Boland ordered Respondents to file a Pre-Answer response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A), if Respondents intended to raise either of those defenses.  Respondents

filed their Pre-Answer Response on October 31, 2009, conceding that the Application was timely and that claims two, seven, eight (in part) and ten were exhausted, but arguing that Mr. Stein had failed to exhaust his state court remedies for claims one, three, four (in part), five, eight (in part) and nine and procedurally defaulted on claims four (in part) and six. After receiving an extension of time, Mr. Stein filed a reply to the Pre-Answer Response on December 11, 2009.

On February 1, 2010, District Judge Philip A. Brimmer issued an Order to Dismiss in Part and to Draw Case to a District Judge.  After noting that Respondents conceded the timeliness of Mr. Stein's Application under 28 U.S.C. § 2244(d), Judge Brimmer proceeded to address claims one, four, five, six and nine which he found were unexhausted and had therefore been procedurally defaulted by Applicant. Judge Brimmer disagreed with Respondents' position regarding claim three.  The Order did not address claims eight, aside from ruling that it, along with claims two, three, seven and ten should be drawn to a district judge.   A motion to reconsider Judge Brimmer's order was denied by this Court. Respondents were ordered to file an Answer to the the Application and did so on April 1, 2010.  I therefore will address the merits of claims two, three, seven, eight and ten.

## II.  STANDARD OF REVIEW ON MERITS

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

The threshold question pursuant to § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08, 120 S. Ct. 1495. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Additionally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* I also grant AEDPA deference to state-court decisions that applied a legal standard either identical to the federal standard or more favorable to the habeas applicant than the federal standard. *Patton v. Mullin*, 425 F.3d 788, 795 (10th Cir. 2005).

III.  MERITS OF THE CLAIMS

A.  Claim Two

Mr. Stein asserts in claim two that his guilty plea was obtained on the basis of promises that were not fulfilled by the Prosecutor, in violation of his Sixth and Fourteenth Amendment rights.   Specifically, Mr. Stein alleges he was informed at his providency hearing on June 8, 2004 that his sentence would be a maximum of twelve years and the Prosecutor failed to object or correct the Court at that time.  He further alleges that he was only informed that he could be subject to the Colorado Indeterminate Supervision Act of 1998 on August 17, 2004 when he was set for sentencing.  As noted by the Respondents' in their Pre-answer, Applicant does not directly identify the promises with which he is concerned but the Court of Appeal's opinion on Applicant's direct appeal discusses the

Prosecution's alleged breach of the original pleas agreement.  The Court of Appeals considered the claim on its merits, finding that the standard of review for an alleged breach of a plea agreement is whether the trial court's decision was clearly erroneous.  (R. Vol. 1 at 30)

In support of this claim, Applicant recounts the facts related to the meetings he had with his counsel just prior to entering his guilty plea on June 8, 2004.  (App. at 6).  He states that he was told that the District Attorney had agreed that if Applicant pleaded guilty to an added 'attempt' charge, he would receive a sentence of 2-6 years that could possibly be increased to 12 years if aggravating circumstances were found.  *Id*. He was also told that the prosecutor would waive the 'two felony' rule that would preclude probation. *Id*. Applicant goes on to note that he was informed by the court of the same facts at the hearing on June 8, 2004 at which he pleaded guilty.  (App. at A3).

Mr. Stein relies on *Santobello v. New York*, 404 U.S. 257 (1971) in support of his claim.  That case involved a situation in which the defendant agreed to plead guilty to a reduced charge with the condition that the prosecutor would not make a sentence recommendation to the court.  After a significant delay and a change of prosecutors, a sentence recommendation of the maximum penalty was made by the prosecutor.  While the sentencing court specifically stated that it was not influenced by the recommendation from the prosecutor, the U.S. Supreme Court noted that while that was probably true, the defendant was entitled to the benefit of the bargain he made.  The judgment was vacated

and the case was remanded for resentencing or to allow the defendant the opportunity to withdraw his plea.

As noted by the Colorado Court of Appeals in its March 1, 2007, opinion on Applicant's direct appeal, the situation that occurred in Mr. Stein's sentencing was very different. (R. at 28).  The appellate opinion notes that the transcript of the sentencing hearing on August 31, 2004, includes a statement from the Prosecutor clarifying that while the offer to Mr. Stein indicated a sentence of 2-12 years, there was no agreement to cap the sentence at 12 years, much less from a possible life sentence. *Id.* (quoting R. Vol. 5 at 6).  The Court of Appeals also stated that it didn't matter even if the parties had made an agreement as to the length of sentence because "we agree with the trial court that it would not be bound by such an agreement." *Id.*

 Of course, in addition to the fact that there had been no binding agreement as to the length of the sentence that Mr. Stein would receive, is the fact that the trial court correctly dealt with the potential constitutional problem when it was realized.  It was recognized by both  counsel and the Court that Applicant had been inappropriately advised of the possible penalties to which he would be subject.  (R. Vol. 4). That was why the sentencing hearing set for August 17, 2004 was continued.  Applicant's counsel noted at the very beginning of the hearing that there had been a mistake regarding the possible sentence and requested a continuance so that research could be done and Mr. Stein could be readvised.  Government counsel went so far as to request that "the Court withdraw the plea on the Court's own motion because it was an incorrect advisal and he was not aware

of the penalties he's facing." (R. Vol. 4 at 4).   Ultimately, the status quo was maintained and the hearing was continued so that Mr. Stein would have an additional two weeks to consult with his counsel and consider his options in light of the ne`w information regarding sentencing.  (R. Vol. 4 at 5). This was specifically to include a determination regarding whether he wanted to withdraw his guilty plea.   *Id*.

The Colorado Court of Appeals found that the plea agreement between the Applicant and the Prosecutor was not breached and the Trial Court did not err in sentencing him to an indeterminate sentence.   (R. Vol. 1 at 5-6). I cannot find that those rulings were objectively unreasonable. Even if there had been a violation of Applicant's constitutional rights regarding promises made to induce his guilty plea, he immediately received the remedy ordered by the U.S. Supreme Court in *Santobello*.   Applicant is not entitled to habeas relief on his second claim.

B.  Claim Three

 In his third claim, Mr. Stein contends that his guilty plea was obtained without his having a full understanding of the plea and its consequences as intended by the Due Process guarantees of the Sixth and Fourteenth Amendments.  This claim was raised in Mr. Stein's Rule 35(c) motion and was rejected by the Court of Appeals in its ruling on that motion. (R. Vol. 1 at 80).

In support of his third claim, Applicant states that it was twelve weeks after his "original" guilty plea that he was informed that there was a discretionary life sentence that could be applied to him.   He also argues that the advisement he was given on August 31,

12

2004 was for an indeterminate Lifetime Probation sentence rather than a lifetime of imprisonment.[1]

The Colorado Court of Appeals found that Applicant received notice and a fair opportunity to be heard, as required by *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003). The opinion affirming the denial of his Rule 35(c) motion noted that he "was fully advised of and stated he understood the charge, his rights and the potential sentence." (R. Vol. 1 at 78).

Applicant's arguments are to no avail. The time between Stein's first guilty plea and the time when he learned he would be subject to a possible indeterminate life sentence has no importance. While he was under the impression that he was subject to a maximum sentence of twelve years, this was no more than a hope on his part, as he had no enforceable commitment on it. There was similarly no detrimental reliance on his expectation of a maximum sentence of twelve years. While Applicant did legitimately suffer a ten (not twelve) week period between June 8, 2004 and August 17, 2004, when he believed that the maximum sentence to which he could be sentenced was twelve years, as discussed previously, on August 17, 2004, the misinformation that had been given to him was corrected. He was told what the actual sentence could be, as well as that he would be allowed to withdraw his guilty plea and that he could have the next two weeks to

---

[1]Applicant also argues that he was not fully and adequately informed of the requirements that must be found to subject him to a lifetime of supervision. I find no relevance of this argument to the facts of this Application and therefore decline to address it.

decide what he wanted to do.   Under those circumstances, Applicant cannot say he suffered any prejudice from the misinformation given to him in June.

As for Applicant's argument that the advisement given to him was for a lifetime of supervision rather than a lifetime prison sentence, the evidence does not support his claim. At the beginning of the hearing on August 31, 2004, the Prosecutor gave a brief overview of the status of the case to refresh the recollection of the Court after a two week continuance. (R. Vol. 5 at 2).   In discussing the new advisement that needed to be given to Mr. Stein, Counsel specifically stated that the penalty "would be anywhere from probation to his natural life in prison."   (R. Vol. 5 at 3).   After his counsel requested specific performance of the deal as was originally offered to him, and the Court said it would not grant that request, defense counsel essentially told the Court that if the Court were inclined to sentence in the 2-12 year range "with 3 years of parole" Mr. Stein would consent to proceeding to sentencing right away but if the Court were inclined to sentence in the indeterminate range, Mr. Stein would like to withdraw his plea and set the matter for trial. (R. Vol. 5 at 15).   The Court responded that while he understood that Mr. Stein would like that information, the Court could not give him that information  (R. Vol. 5 at 17-18).   After a statement from Mr. Stein saying he was unsure what he should do as he realized that whether he withdrew his guilty plea or not, he could be subject to the maximum sentence, a brief recess was again ordered to give Applicant a chance to make his decision.   (R. Vol. 5 at 20).

14

The foregoing evidence supports of Colorado Court of Appeal's opinion  that Applicant was given adequate notice and plenty of time to determine what he wanted to do. The transcript of the August 31, 2004 change of plea also makes it clear that Applicant was given ample opportunity to be heard.  (R. Vol. 5).  Under these circumstances, there was no misapplication of Supreme Court law by the Colorado Court of Appeals and Applicant is not entitled to habeas relief on this claim.

C.  Claim Seven

In his seventh claim, Mr. Stein asserts that he was sentenced in violation of State Statutes which denied him due process as guaranteed by the Sixth and Fourteenth Amendments.  More specifically he alleges that the indeterminate sentence to which he was subject required a risk assessment be done that would determine whether he was likely to commit further crimes of the type for which he was being sentenced.  This claim was presented both in Applicant's direct appeal and in his Rule 35(c) motion.  (R. Vol. 1 at 29 and 74).

While Applicant contends this is a due process violation, I find that it is more properly described as an allegation of a procedural error by the state court.   "We take this opportunity to confirm that federal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation."  *Shipley v. Oklahoma*, 313 F.3d 1249, 1251 (10th Cir. 2002).

The Colorado Court of Appeals found that the Trial Court had properly applied the criteria set forth in 18-3-414.5(1)(a)(II) & (III) to impose an indeterminate sentence.  (R.

Vol.14 at 76).   Based on numerous factors contained in the presentence report and the mental health evaluation, the Trial Court found Mr. Stein was likely to commit sexual assault on a child.   This finding was sufficient to establish the prerequisites for an indeterminate sentence.   *Id.*

Additional support exists in the record for the Court of Appeal's determination. Counsel and the Court were very aware of a potential for problems on August 31, 2004. They quickly realized that the Mental Health Evaluation done on Mr. Stein was ordered pursuant to the statute which everyone had thought would be the basis for sentencing, C.R.S. § 18-3-414.5(1)(a)(II), not realizing that the indeterminate sentencing statute, C.R.S. § 18-1.3-1004(4)(a) & (b)(II) applied to Mr. Stein.  (R. Vol. 5 at 37).  After a recess to obtain information about whether an additional evaluation was necessary, the Prosecutor stated that she had spoken with the probation officer assigned to the case. (R. Vol. 5 at 38).

The gist of the probation officer's opinion appears to have been that the professional Offense Specific Mental Health Evaluation would not be any different if the potential sentencing enhancement had been pointed out to the evaluators, as the offense remained the same.   Similarly, there would be no need to modify Mr. Stein's treatment and containment needs or his high level of risk to children in the community.  (R. Vol. 5 at 39). This was particularly true as the professionals had indicated that they agreed that Applicant should receive the maximum aggravated sentence possible.  *Id.*  Finally, the Prosecutor indicated that as the professional evaluation would not have changed for sentencing under the other statute, it would be up to the Probation Department to use the report information

to make its recommendation as to whether Mr. Stein would be "likely to commit one or more of the offenses specified in section 18-3-414.5(1)(a)(II), under the circumstances described in 18-3-414.5(1)(a)(III)." Defense counsel agreed, to the extent that he responded, "Well, Your Honor, we are prepared to proceed to sentencing. I can't really see how the Court is going to glean any new information from further evaluation." (R. Vol. 5 at 40).

Consequently, there appears to have been a consensus between counsel and the Court that the evaluation that had been done contained sufficient information for a determination to be made pursuant to § 18-1.3-1004(4)(a) & (b)(II) and that returning the presentence report for further information or evaluation would be fruitless. Under those circumstances, the opinion of the Court of Appeals is eminently reasonable and Applicant cannot show that he has suffered any actionable deprivation.

Accordingly, Mr. Stein is not entitled to habeas relief on his seventh claim.

D.  Claim Eight

In his eighth claim, Mr. Stein asserts that he was denied the opportunity to present a defense to the sentencing enhancing factors to which he was subjected. He describes this as a procedural due process violation. This claim was raised in both of Mr. Stein's Rule 35(c) motions and on direct appeal. (R. Vol. 1 at 29 and 78 ).

The Court of Appeals found that Applicant waived the right to have a jury determine the facts necessary for him to be sentenced to an indeterminate term. (R. Vol. 1 at 30).

The evidence in the record supports the Court of Appeals on this issue. The case

which forms the base of Applicant's eighth claim, *Blakely v. Washington*, 542 U.S. 296 (2004) was decided on June 24, 2004, approximately two weeks after Applicant first changed his plea to guilty.   In the *Blakely* case, the U.S. Supreme Court found that sentencing a defendant to a term in excess of the statutory maximum, based on additional facts which were not proven to a jury or admitted by the defendant, violated the defendant's Sixth Amendment right to trial by a jury.

The first mention of *Blakely* in this matter occurred on August 31, 2004, when Applicant returned to give his decision on whether he wished to withdraw his plea.  At that time, it was determined that while *Blakely* was not a factor in June, it was a factor in August.  The Prosecutor noted that Mr. Stein was entitled to have a jury empaneled so that it could make findings about whether Applicant was a violent sexual predator. (R. Vol. 5 at 24).  The Court gave Defense Counsel an opportunity to explain the relevance of *Blakely* to his client, after which Counsel stated that against his advice, Mr. Stein wished to waive *Blakely* as well.  The Court followed up with Applicant,  "Mr. Stein, you are waiving your right to have a jury make findings of fact which could place your sentence into the aggravated range and bring – the Court could make those findings.  Now is that your understanding in this case, Mr. Stein?"  (R. Vol. 5 at 24-25 ).  Applicant stated that it was. After several additional pages of questions by the Court and answers by Mr. Stein, the following exchange took place.

> The Court: Mr. Stein, we've talked about this issue of Blakely.  The United States Supreme Court on June 24th of this year decided a case called *Blakely v. Washington* in which they held that a defendant in a criminal case has the right to have a jury make finding of fact with the exception of prior convictions

which could cause a defendant's sentence to be placed into the aggravated range, okay?  And what you've been asked to do here as part of this plea agreement is to waive that right.  Do you understand that?

The Defendant: Yes, sir.

The Court: And is it your intention to waive the right to have a jury such findings and agree that the Court could make findings of fact which could aggravate your sentence.

The Defendant: Yes, sir.

(R. Vol. 5 at 27-28).

The evidence could not be any more clear than that.  The Colorado Court of Appeals applied the federal law correctly and Applicant is not entitled to habeas relief on this eighth claim.

### E.  Claim Ten

Applicant's final claim contends that he was sentenced to a term beyond the maximum presumptive range on the basis of facts not determined by a jury.  This claim was raised in both Mr. Stein's direct appeal and in his Rule 35(c) motion.  (R. Vol.1 at 30 and 79).

This is another version of a claim based on *Blakely.* As set forth in detail above, Applicant clearly waived the application of *Blakely* to his case, after it had been explained to him several times.  In addition, I note that Applicant is an individual who has a Master's Degree.  (R. Vol. 5 at 22).  Consequently, despite the fact that Defense Counsel said that both the guilty plea and the waiver of the application of *Blakely* were against his advice, there was no cause for concern on the part of the Court because Mr. Stein was clearly intelligent enough to understand the choices that he made.  While he obviously discounted

the likelihood of being sentenced to life in prison, he was given every opportunity to make different choices in the courtroom and he declined to do so.  There is no judicial remedy for those missteps.  Applicant is not entitled to habeas relief.

Accordingly, it is

ORDERED that Applicant Michael David Stein's Application for a Writ of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Doc. No. 3) is **DENIED** and the action is **DISMISSED WITH PREJUDICE**.  It is

**FURTHER ORDERED** that no certificate of appealability will issue because Mr. Stein has not made a substantial showing of the denial of any constitutional right.

Dated:  June 23, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge